```
              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS
                                    )
UNITED STATES OF AMERICA            )
                                    )
           v.                       )  CR. NO. 04-10272-RCL
                                    )
DAVID ALLEN                         )
                                    )
```

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS

### Introduction and Summary

Boston police officers discovered a fully loaded semi-automatic pistol in the defendant's possession when they stopped him in the street on June 21, 2004. In seeking to suppress evidence of the firearm and statements he made thereafter, the defendant advances a self-serving version of events that is incorrect. He alleges that the officers, upon seeing him, simply blocked his path without reason, asked for his name, and then frisked him. On the contrary, officers effected a _Terry_ stop of the defendant only after he and an acquaintance distanced themselves from a group upon seeing the officers, fled when the police followed, and clutched his waist area during the flight in a manner suggesting he was concealing and steadying an un-holstered firearm tucked in his pants. These facts supported an articulable suspicion that the defendant possessed a firearm, which justified the subsequent stop and frisk. The Court should therefore deny the motion.

### Facts

On June 21, 2004, at approximately 10:00 p.m., Boston Police officers from the Youth Violence Strike Force and District C-11 (Dorchester) were patrolling the area of Morse and Washington Street due to a significant increase in firearm violence in that area. Officers observed a large group of individuals standing at the lower end of Morse Street, near Washington.

As the officers approached, an individual in the group named Kenyatta Lindsay alerted the defendant and the others to the officers' presence by yelling "50," a slang term for the police. As the crowd began to disperse, the defendant and Lindsay began to run down Washington Street, turning right towards Columbia Road. Officers Edwin Guzman, Thomas Pratt, Robert Charbonnier, Jessie Goff, Timothy Stanton, and MBTA Officer Robert Pavia gave chase. As the defendant fled, officers observed him clutching his right front hip area in a manner consistent with the movements often exhibited by suspects carrying firearms without a holster.

Sergeant Steve McLaughlin and Officers David Yee and Steve Romano were in an unmarked cruiser and were able to stop the defendant from further flight by cutting off his path. Officer Romano was the first officer to approach the defendant and, for officer safety, performed a pat frisk of the defendant, at which time Officer Romano discovered a firearm in the defendant's possession, leading to the defendant's arrest. As officers were

2

handcuffing him, the defendant stated "You got me, I know you saw it." The firearm at issue is a Beretta brand, 9mm pistol; it was loaded with 15 rounds of ammunition.

**Argument**

**THE POLICE WERE ENTITLED TO STOP AND FRISK THE DEFENDANT**

A.  The legal framework

In Terry v. Ohio, 392 U.S. at 22, the Supreme Court recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to effect an arrest." In determining whether a particular investigatory seizure or search violates the Fourth Amendment's protection against unreasonable searches or seizures, the inquiry is the now familiar two-prong test announced in Terry -- "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 19-20; see also United States v. Sharpe, 470 U.S. 675, 682 (1985); United States v. Stanley, 915 F.2d 54, 55 (1st Cir. 1990); United States v. Trullo, 809 F.2d 108, 111 (1st Cir. 1987). To justify the need to stop and search, the Court held that "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant

that intrusion." Id. at 21.  The facts and inferences the officer relies on are to be judged in the context of the "totality of the circumstances -- the whole picture." United States v. Cortez, 449 U.S. 411, 417 (1981).

 B. Analysis

 The officers were entitled to stop the defendant because they possessed an articulable suspicion that he was armed.  The defendant was not "stopped" for Fourth Amendment purposes until Officer Romano blocked his path and approached him.  California v. Hodari D., 499 U.S. 621, 626 (1991)(police officer's pursuit of defendant does not constitute "seizure" absent physical contact with defendant or evidence that defendant yielded to show of authority); United States v. Sealey, 30 F.3d 7, 9 (1st Cir. 1994).  Relying on all of the facts leading up to that point, there is no issue that the police were entitled to stop the defendant.  The police officers were patrolling the Morse Street and Washington Street area because of the recent increase of shooting when they spotted the large group of individuals.  The defendant, without provocation, fled upon realizing that police had arrived.  While running, the defendant clutched his waist area in a manner which the officers believed from their experiences to be consistent with someone holding onto an un-holstered weapon.

While each of these factors alone might not be sufficient to support an articulable suspicion of criminal activity, they unquestionably do when taken together and viewed through the prism of the trained police officers. See <u>United States v. Gillard</u>, 847 F.2d 21, 24 (1st Cir. 1988)("court must consider all of the relevant circumstances, which are not to be dissected and viewed singly; rather they must be considered as a whole" to the determine the reasonableness of a stop). The articulable suspicion standard is not a stringent one. "The Fourth Amendment requires `some <u>minimal level</u> of objective justification' for making the stop." <u>United States v. Sokolow</u>, 490 U.S. 1, 7 (1989), <u>quoting</u>, <u>INS v. Delgado</u>, 466 U.S. 210, 217 (1984) (Emphasis added). Surely the defendant's actions justified a brief stop to determine whether what he was clutching during his unprovoked flight from the police was a gun. Indeed, where the defendant bases his motion on a completely different, implausible version of events, he does not ever argue that the officers' actions were improper based on these facts.

### **Conclusion**

The defendant's unprovoked, deliberate flight from the police along with his clutching at his waist area gave rise to a reasonable suspicion that the defendant was armed and fled the police in order to avoid being discovered with a firearm. As such, the police were entitled to stop him to determine whether

he was armed.  The Court should accordingly deny the motion to suppress evidence.

                                          Respectfully submitted,

                                          MICHAEL J. SULLIVAN
                                          United States Attorney

By:

                                          /s/Donald L. Cabell
                                          DONALD L. CABELL
                                          Assistant U.S. Attorney